

ZAINEY, J.
OCTOBER 7, 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIE WASHINGTON, JR. | CIVIL ACTION |
| VERSUS | NO. 04-1364 |
| MURPHY OIL CORP., ET AL. | SECTION "A"(3) |

### ORDER AND REASONS

Before the Court are cross **Motions for Summary Judgment** by plaintiff Willie Washington, Jr. **(Rec. Doc. 24)** and defendant Murphy Oil Corporation **(Rec. Doc. 23)**. The motions, set for hearing on June 29, 2005, are before the Court on the briefs without oral argument. For the reasons that follow, Plaintiff's Motion for Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED.

I.   BACKGROUND



Willie Washington, Jr. ("Washington" or "Plaintiff") brought this action against Murphy Oil U.S.A., Inc. ("Murphy" or "Defendant") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiff alleges that disability retirement benefits were wrongfully withheld from him upon his termination of employment with Murphy.

Plaintiff was hired at Murphy's Meraux Refinery on December 10, 1990, as a plant operator. While employed with Murphy, Plaintiff was covered by the Retirement Plan for Employees of Murphy Oil U.S.A., Inc., represented by the United Steelworkers of America, Local No. 8363 ("the Plan"). The parties do not dispute that the Plan is governed by ERISA. Plaintiff became a plan participant on January 1, 1992. On October 12, 1999, Plaintiff began a medical leave of absence due to a work-related back injury, and never returned to work. Plaintiff received paychecks from Murphy through August 10, 2001, and when the paychecks stopped Plaintiff sought permission to return to active duty at the refinery. Plaintiff could not get medical clearance to return to active duty so October 12, 1999, was Plaintiff's last day at work.

Plaintiff filed a charge of employment discrimination against Murphy and pursued a worker's compensation claim. Plaintiff was represented by counsel while pressing those claims.[1] On December 10, 2001, counsel for Murphy sent a letter to Plaintiff's counsel in response to an inquiry regarding Plaintiff's entitlement to a disability pension benefit. (Def. Exh. 2). In that letter, counsel for Murphy explained that Plaintiff did not qualify for a disability pension because he had only "8 years, 10 months, and 11 days" of "vesting service credit," and that the Plan required 10 years of credit in order to qualify for the disability pension. (Id.).

Plaintiff subsequently compromised the discrimination charge and the worker's compensation claim. The settlement agreement provides that nothing in the agreement "is intended to have any impact on the benefits . . . that Washington has earned, become vested in, or is otherwise entitled as a result of his employment with Murphy prior to and including his date of termination from Murphy *which termination date will become effective the date this*

---

[1] Current counsel for Plaintiff in this matter did not represent Plaintiff in conjunction with those claims. (Smith Depo. at 83).

*agreement is signed by Washington."* (Def. Exh. P-6, ¶ 10) (emphasis added). Washington signed the agreement on June 14, 2002.

On September 19, 2002, Murphy sent Plaintiff a "Notice to Terminated Vested Participant" which is a standard letter that Murphy sends to vested employees upon termination of employment to inform them of a future right to benefits. (Attach. to P-10; Smith Depo. at 80). The Service Ended blank in the Notice contains the date June 14, 2002, and the Credited Service blank states 11.453 years. (Attach to P-10). Based on those numbers the form indicates that Washington would be eligible to receive $633.15 per month beginning at age 65 on 04-01-2022. (Id.). The Notice says nothing about eligibility for a disability pension.

On June 8, 2003, Plaintiff's current counsel advised Ronald Smith ("Smith"), Murphy's Benefits Manager, in writing that he had been retained to represent Washington concerning a claim for disability benefits.[2] On December 16, 2003, Plaintiff's counsel

---

[2] Washington has never received disability benefits. In fact, he has never applied for them. The Court can only assume that Plaintiff's former counsel had conveyed to Washington the contents of the December 10, 2001, letter from Murphy's counsel explaining why Plaintiff did not qualify for a disability pension under the terms of the Plan. Plaintiff's current counsel points

4

sent a letter to Murphy's counsel explaining why he believed that his client was entitled to a disability pension. (Exh. P-12). Attached to that letter is the September 19, 2002, Notice that shows 11.453 years of credited service. If the information on the Notice had been correct Washington would have undoubtedly been eligible to receive a disability pension.[3]

Three days later on December 19, 2003, Smith sent to Washington a "revised" Notice indicating that his Service Ended date was October 12, 2000, and that he had Benefit Service of 8.782 years. (Exh. P-11). The cover letter accompanying the revised notice states that the September 19, 2002, Notice was incorrect. (Id.). In his deposition Smith explained that his assistant, who was relatively new, had provided the information for first Notice and that the incorrect information was simply an oversight. (Smith Depo. at 74, 95). In sending the information

---

out that he did not see the letter until Smith's deposition but it does not necessarily follow that Washington's former counsel failed to apprise Washington of Murphy's position regarding disability benefits.

[3] Although Washington would be eligible to receive a disability pension based on the years credited on the Notice, he also would have to establish that he is disabled under the terms of the Plan. The issue of disability has never been presented to the plan administrator. Washington asserts, however, that he is currently receiving Social Security disability benefits.

to the actuary the assistant had failed to note that Washington had not worked since October 12, 1999, which would put his benefit service ending 12 months later on October 12, 2000. (Id.).

## II. THE PARTIES' CONTENTIONS

### 1. *Plaintiff's Motion for Summary Judgment*

Plaintiff argues that the Summary Plan Description ("SPD") states that a "vested" employee is eligible to receive a disability pension and that employees are vested after 5 years of service. Plaintiff argues that to the extent that the Plan itself requires 10 years of service, the SPD and the Plan are in conflict and under Fifth Circuit law the SPD controls.

In opposition Defendant argues that the SPD at issue is neither inaccurate nor incomplete and therefore the cases that Plaintiff cites in support of his argument are distinguishable. Defendant contends that the SPD clearly refers the employee to the exceptions listed in the disability section of the Plan and the disability section states that 10 years of service are required. While Defendant agrees that Washington's separation date from Murphy was June 14, 2002, Defendant nevertheless

6

contends that under the terms of the SPD and the Plan his benefit service (the time that counts toward the pension) stopped accruing on October 12, 2000, 12 months after Plaintiff's last day on the job.

## 2. *Defendant's Motion for Summary Judgment*

Defendant argues that the Court should review the denial of benefits for abuse of discretion because the Plan gives the administrator discretionary authority to determine eligibility and to construe the terms of the Plan.  Defendant argues that the erroneous Notice sent to Washington on September 19, 2002, has no effect on Washington's entitlement to benefits and that it was appropriate for the administrator to correct the error.

Defendant also argues that the SPD and plan document are not in conflict.  Moreover, according to Defendant, Washington cannot claim to have relied to his detriment on any alleged conflict because Murphy advised his counsel on December 10, 2001, that Washington did not qualify for a disability pension.[4]

---

[4] Defendant also argues that any state law claims are preempted by ERISA.  Plaintiff did not oppose this argument. Given that this law suit is one for ERISA benefits the Court agrees that any state law breach of contract claims are preempted.  Ellis v. Liberty Life Assurance Co., 394 F.3d 262, 276 n.34 (5th Cir. 2005).

In opposition, Plaintiff stands by the arguments raised in his motion for summary judgment and supplemental brief.

### III. LAW AND ANALYSIS

#### 1. *Standard of Review*

The validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of the terms in the plan at issue. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Id. Where the plan gives the administrator or fiduciary discretionary authority to make benefits determinations those determinations are reviewed for abuse of discretion. Ellis, 394 F.3d at 269.

Under the abuse of discretion standard the plan fiduciary's interpretation of its plan is reviewed pursuant to a two-step process. First, the court must determine whether the fiduciary gave the plan a legally correct interpretation. Id. (quoting Wildbur v. ARCO Chem. Co., 974 F.2d 631, 637-38, modified, 979

F.2d 1013 (5th Cir. 1992)).  In determining whether the administrator has given the plan a legally correct interpretation a court must consider 1) whether the administrator has given the plan a uniform construction, 2) whether the interpretation is consistent with a fair reading of the plan, and 3) any unanticipated costs resulting from different interpretations of the plan.  Id.  If the court determines that the fiduciary's interpretation was legally correct then the inquiry is over.  Id.  However, if the court determines that the fiduciary's interpretation was *not* legally correct then the court must go on to determine whether the administrator has abused his discretion.  Id.

Murphy urges the Court to review this benefits decision under the foregoing two-step Wildbur analysis.  Even though Plaintiff does not take issue with this point, the Court questions whether deferential review applies under these facts.  Although section 10.2 of the Plan gives the Benefits Committee discretionary authority to construe and interpret the Plan, (Exh. P-3), the record reflects that the benefits decision at issue was made by Smith, Murphy's Benefits Manager.  Although

Murphy refers to himself as the plan administrator, (Exh. P-1), the SPD designates the Employee Benefits Committee ("Benefits Committee") as plan administrator. (Exh. P-2). The Benefits Committee consists of 3 or more members appointed by Murphy's Board of Directors. (Id.). The SPD does state the Benefits Committee has delegated "certain *limited* responsibilities in order to carry out the day-to-day operations of the Plan," (id. (emphasis added)), and in his deposition Smith explained that he has been delegated administrative responsibilities for the Plan, (Smith Depo. at 9). But none of the Plan documents confer any type of fiduciary role or discretionary authority upon Smith, the representative of Murphy who made the benefits decision in this case. Thus, the Court is doubtful that this particular benefits decision should be reviewed under the deferential standard that would apply had the Benefits Committee rendered a decision in this case.[5] See Ellis, 394 F.2d at 266 n.3. Nevertheless, the standard of review is not determinative here because the Court is

---

[5] The Court is aware that Plaintiff did not submit an actual application for benefits such that the Benefits Committee would have had an opportunity to review it in the normal course of events. Nevertheless, there is nothing in the record to suggest that the Benefits Committee made the benefits decision currently under review.

10

persuaded, for the reasons given below, that the denial of benefits in this case was erroneous even under the abuse of discretion standard due to the clear conflict between the SPD and the Plan.

### 2. *SPD Conflict*

ERISA requires plan administrators to provide their participants with an accurate, comprehensive, and easy to understand summary of the plan. Fallo v. Piccadilly Cafeterias, Inc., 141 F.3d 580, 583 (5th Cir. 1998) (citing 29 U.S.C.§ 1022(a)(1)). The SPD is intended to simplify the language of the plan, allowing the average plan participant to understand his rights and duties. Id. However, the SPD is merely a summary of the plan and cannot contain every term. Fallo, 141 F.3d at 584 n.20. Therefore, the omission of certain provisions and terms from the SPD will not alter the plan. Id. (citing Sprague v. Gen. Motors Corp., 133 F.3d 388, 400 (6th Cir. 1998)).

If, however, the language in the SPD conflicts with the language of the plan, the SPD is given effect. Fallo 141 F.3d at 583-84 (citing Hansen v. Continental Ins. Co., 940 F.2d 971, 981 (5th Cir. 1991)). The Fifth Circuit has rejected the notion that

the SPD is to be interpreted in light of the language in the plan because it is the SPD and not the plan upon which the average beneficiary has relied. Id. Mere ambiguities in the SPD, as opposed to positive conflicts between the SPD and the plan, are also resolved in favor of the participant. Rhorer v. Raytheon Engr's & Constructors, Inc., 181 F.3d 634, 642 (5th Cir. 1999). Moreover, disclaimers to the effect that the plan itself will control in the event of ambiguities or conflicts in the SPF are not legally binding. Hansen, 940 F.2d at 982.

Turning now to the instant case, the SPD provides that

> "[A] *vested* employee who shall become, through some unavoidable cause, Permanently Disabled, shall be eligible to retire and have his pension commencing not later than the seventh month following the occurrence of the disability. *To obtain the disability pension, the employee must not be in one of the exceptions listed in the Plan* and must be able to prove that he is permanently disabled . . . ."

(Exh. P-2) (emphasis added). The SPD defines "vesting" as "the completion of *five (5)* Years of Benefit Service whereby [the employee] acquire[s] a non-forfeitable right to receive a pension benefit under the retirement plan at a future point in time." (Id. (emphasis added)). Murphy does not dispute that Washington

12

was a vested employee with five years of benefit service. Thus, under the first sentence quoted above and taken from the SPD, Washington would qualify for a disability pension.

However, section 6.1 of the Plan document states that "[a]n Employee *who shall have at least 10 years of Vesting Service as a Participant of the Plan* . . . shall be eligible to retire and after his Retirement to receive a Disability Pension." (Exh. P-3) (emphasis added). Because Washington became a plan participant on January 1, 1992, and stopped accumulating vesting service time as of October 12, 2000,[6] Washington would not be eligible for a disability pension under section 6.1 of the plan. Certainly at first blush the SPD and the Plan would seem to be in direct conflict.

However, the SPD informs the employee that in order to receive the disability pension he cannot be in one of the *exceptions* listed in the Plan, and according to Murphy, the 10 year requirement is simply an "exception" that Plaintiff must not

---

[6] Plaintiff disputes whether his vesting service should terminate as of October 12, 2000, or June 14, 2002, the date that his employment with Murphy officially terminated according to the settlement agreement. This dispute is not pertinent to the conflict issue.

13

fall under in order to receive the disability pension.  Murphy contends that the caveat regarding the exceptions that are listed in the Plan, which is stated in the sentence immediately following the statement in the SPD upon which Plaintiff relies, unequivocally refers the employee to the Plan in order to fully assess his eligibility for a disability pension.  Murphy points out that Washington cannot obtain benefits by simply ignoring the the statement in the SPD that refers him to the Plan.  According to Murphy, the sentence referring the employee to the Plan for "exceptions" cures any potential conflict between the SPD and the Plan.

Murphy is correct that Washington cannot simply ignore the caveat sentence regarding the exceptions listed in the Plan.  However, Murphy's contention that the 10 year requirement is an *exception* to coverage is simply untenable.  The word "exception" is not used anywhere in section 6.1.  However, subpart (a) of that section lists several scenarios under which a disability will not be found to have resulted from an unavoidable occurrence, e.g., engaging in a felonious criminal enterprise, sustaining injury from habitual drunkenness, or sustaining injury

14

from intentional self-inflicted injury. (Exh. P-3). A commonsense understanding of the term "exception" would lead one to believe that these scenarios are the "exceptions" *listed in the Plan* that the employee cannot fall under in order to receive the pension. This is so because an "exception" is created to exclude where there would otherwise be inclusion. Thus, a vested employee who became disabled would fall under one of the exceptions if he were injured while committing a felony. That employee would surely be denied a disability pension and he would have no success in challenging that decision based upon the argument that the SPD did not expressly recite the felony exception. The SPD need not recite the Plan verbatim, indeed it cannot because it is by definition a summary, but the employee would have fair notice that there are certain exclusionary exceptions listed in the Plan, and the average person would apply a common sense application of the term "exception" and recognize that the felony, drunkenness, and self-infliction categories are "exceptions" even though they are not expressly labeled as such.

The 10 year requirement, on the other hand, does not create an exception to coverage, <u>i.e.</u>, purport to foreclose eligibility

where the employee would otherwise be eligible.  The 10 year requirement cannot reasonably be characterized as an "exception."  Instead it purports to define the starting point for determining whether an employee qualifies for a disability pension, that is the universe of eligible employees.  From there the exceptions apply to reduce the potential recipient group.  Because the ten year requirement is an affirmative statement which defines the starting point for determining whether an employee meets the threshold qualifications for a disability pension, it is in direct conflict with the SPD which defines that same starting point at vesting or five years.

Moreover, the conflict is not cured by the statement in the SPD that refers the employee to the Plan for exceptions.  In actuality, Murphy's position is that the employee must read section 6.1 of the Plan in order to ensure that he does not fall under one of the exceptions, and when he does so he cannot help but discover the ten year requirement whether by careful reading, accident, or even serendipity.  Thus, the employee will inevitably discover the truth in the Plan, and although he might be confused as to whether the disability requirement is five or

16

ten years, the disclaimer clause on the front of the SPD states that the Plan governs, so the employee will be held to the ten year requirement. But the well-settled law of this circuit does not allow an employer to rely on a disclaimer to cure a conflict between the SPD and the Plan. Moreover, to do so would allow employers to circumvent the requirement of providing an "accurate, comprehensive, and easy to understand summary of the plan" by simply including a phrase in the SPD that requires the employee to refer to the Plan on some aspect of coverage even if it does not relate to the issue in conflict. Such a result would be at odds with the statutory requirement of forcing the employer to provide an SPD in the first place. The law simply does not allow an employer to enforce a more stringent requirement than that stated in the SPD by assuming that the employee must have seen the more stringent requirement while examining the Plan document for other requirements and exceptions.

Murphy points out that Washington cannot establish that he relied on the five year designation in the SPD given that he was informed before he was administratively terminated, via his former counsel, that he did not qualify for a disability pension.

Other circuits require the participant to establish reliance and some even require a more heightened showing of detrimental reliance. See Buce v. Allianz Life Ins. Co., 247 F.3d 1133, 1155-56 & n.1 (11th Cir. 2001) (Carnes, J., concurring) (summarizing dicta from numerous circuits). However, the Fifth Circuit has never held that an ERISA claimant must prove reliance on an SPD in order to prevail on a claim for benefits. Rhorer, 181 F.3d at 644 n.12 (citing Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 393 n.4 (5th Cir. 1998); Hansen, 940 F.2d at 983). This Court declines to add an additional element to Plaintiff's claim where the Fifth Circuit has expressly declined to date to do so.

In sum, the Court concludes that under the law of this circuit the SPD controls and under the SPD Washington is eligible for a disability pension assuming that he can establish that he is disabled under the terms of the Plan.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 23)** filed by Murphy Oil Corporation should be and is hereby **DENIED**;

IT IS FURTHER ORDERED that the **Motion for Summary Judgment (Rec. Doc. 24)** filed by Plaintiff should be and is hereby **GRANTED**;

IT IS FURTHER ORDERED that this matter is **STAYED** pending a disability determination by Defendant. The Clerk of Court shall mark this action **CLOSED** for statistical purposes. The Court shall retain jurisdiction and the case shall be restored to the trial docket upon motion of a party if circumstances change, so that it may proceed to final disposition; this order shall not prejudice the rights of the parties to this litigation.

* * * * * * * *